Good morning, your honors. Good morning. May it please the court, my name is Ben Broderick of Theodore Oringer, and I represent the County of Orange petitioning this matter. The County of Orange is entitled to have a jury decide its claims against Tata Consultancy Services. There are at least five reasons we believe that this is the case. First of all, let's start with what's not at issue. There's no question that the county timely and properly demanded a jury in this case. And there's no question that the nature of the claims asserted here... Mr. Broderick, the problem I'm having with this case is that it was your client who proposed from the get-go that the jury be waived. And I find it very odd that we are now here listening to your client claim. Even though I wrote the contract and proposed it, I shouldn't be held to it. I understand, your honor. And it is an odd circumstance, but it is not unique to the county by any means. In fact, as you're well aware, because I know you've read the papers, there have been four different decisions just like this. So what we have here is a lot of what we call legacy contracts. Contracts that were drafted long ago by lawyers that, at the time, were complying with the law. But then there's a Grafton decision that makes one provision of those contracts illegal, and nobody realizes it at the time. Okay. So let me see if I can shorten it to this point. You're not suggesting that there was any fraud in the procurement of the clause. You're saying that, yes, the county drafted it, but it wasn't until the California Supreme Court made clear that these clauses are essentially unenforceable under California law because they don't meet a statutory exception. And we should have changed our form contract, but we didn't, and here we are. Correct. Okay. And in that regard, the county finds itself... So doesn't everything then revolve around whether federal law applies to the waiver determination or whether California law applies? Yes, Judge Gold, that is particularly the focus of this matter. You're absolutely right. But I do want to sort of put it in a proper context in order to answer that question appropriately because I think the court below confused the realm of federal and state law as it applies to the enforcement of the contracted issue here. I thought she wrote a pretty clear decision. I mean, she basically says, I look at ERIE and its progeny, and this looks to me to be a determination of who makes the decision, not what the decision is. Right. And that is not an unreasonable reading of the ERIE line of cases. I understand the point. However, it actually does miss what is going on here. And in order to adequately distinguish between the cases that the court below relied upon and this case, I want to put it in that ERIE context that you are mentioning. And in order to do that, I just want to, again, emphasize what are the issues that are within the federal realm and what are the issues that are within the state realm. So there is no question that if there was an issue of whether the county had demanded a jury or there was an issue as to whether the county had asserted claims that were legal claims for which the 7th Amendment grants the right to a jury, that would be an issue of federal law. No one disputes that. But TATA has not alleged that there has been any conduct in this case that would result in a waiver under the federal rules of civil procedure. What they have alleged instead is that there is a contract out there that existed. Wait, wait, wait. Let me stop you on that. The federal rules of civil procedure don't even go – don't even attach until litigation begins. Correct. And we're dealing with a pre-litigation waiver. Precisely. So I'm not sure – I don't think there's any question that once litigation began that the county followed the federal rules of civil procedure. But the question is, do we enforce the provision in the contract? Excellent. That's exactly where we're headed. Okay. Can I ask you one preliminary question? Yes. I'm just curious. Why is it that you want the jury trial? Is it just your devotion to a jury system, or do you have some strategic reason for it? The county believes that a jury would be very sensitive to the injustice that was done here with county funds, to the fraud that was perpetrated upon the public in the form of portraying themselves as a company that could perform this contract when they knew very well that they were incapable of doing so. So there is a strategic reason? There is. Absolutely. So I want to emphasize precisely what Judge Tolman just mentioned, which is that this is not within the scope of waivers that take place under the federal rules of civil procedure. This pertains to the enforcement of a contract that was entered into before the commencement of litigation. And contract law is quintessentially a state law issue. Moreover, granting the counties written this case would in no way interfere with any federal law or policy. On the contrary, as numerous district courts who have confronted this particular issue have already noticed, recognizing the state law where it properly belongs here under ERIE also has the beneficent effect of promoting federal policy, protecting the jury right where it applies. Also, we would mention that under ERIE there is no federal common law of contracts, nor does federal procedural law displace California's substantive law as it regards the enforcement of contracts. And here, the substantive law categorically renders the jury waiver provision at issue void and a nullity. Finally, on a separate ground, we note that the county is not bound by the provision waiving the jury for the separate reason that the county has alleged that the entire contract was the result of a fraud. Now that gets back to the question I asked you before. The entire contract including the jury trial waiver provision? And I think Judge Tucker asked you that question as well when you were before her. Correct. So we're not alleging that we were hoodwinked into accepting that clause. Well, it would be a difficult argument to make. Exactly. And of course we're not making that argument. But what we are making is that, and the cases that we cited make this distinction, the Green v. Mount Diablo case makes this distinction, if you're simply alleging fraud in the performance of the contract, that would not get you out of an arbitration clause, for example. However, if you are alleging fraud in the formation of the contract, that does get you out of an arbitration clause. But for the same token, it should get you out of a jury waiver provision. So is the theory that by misrepresenting its capabilities to produce the software on the terms and conditions that the county wanted, that that as a matter of law renders the entire contract fraudulently induced? Well, there's certainly more than just that misrepresentation. Well, and you have other claims. But yes, we believe that the county selected TATA based on a series of misrepresentations, and that the entire contract is therefore unenforceable and fraudulently induced. Because as I understand it, the contract was actually written and circulated as part of the request for proposal before the county ever talked to TATA. Correct. So again, the fraud is not that we ended up with this contract. The fraud is that we ended up with this vendor as the partner in the contract. But how does that render the contract itself fraudulent? Why wouldn't I conclude from the factual, the timetable here, that it's true the county would never have entered into the contract in the first place had they not been misrepresented or had not been hoodwinked by a vendor who said it had the capability to do what the county wanted to be done? But does that render the contract document itself fraudulent? It renders it unenforceable by TATA. Absolutely. Absolutely. Okay. What's at stake here is not simply the county's right to a jury in this case either. The decision below, we believe, fundamentally misconstrued ERIE and the relationship between federal and state law. Thus, by granting the county's writ, this court can set the record straight as to what ERIE means and as to this circuit's commitment to those ERIE principles. Second, by granting the county's writ, the court would appropriately reinforce the circuit's commitment to resolving all issues in favor of the or indulging every reasonable presumption against the waiver of a jury trial as required under Nordbrock. And finally, by granting the writ, the court would ensure uniform treatment as to the party's substantive rights, which is one of the purposes of the ERIE decision and in so doing would promote fairness and discourage form-shopping. Now, I would mention that we are, of course, aware of the cases that respondent-sided and respondent-court-sided that say in an isolated soundbite, federal law governs the determination of a jury right in federal court. But those cases are cited having been stripped from their factual underpinnings and without taking account of the procedural context in which they arose and the federal interests that were being served in those cases. So, in particular, I want to just go back to the basics. I hope you'll indulge me here. Let's look at what ERIE actually says. The Supreme Court back in 1938 said, quote, except in matters governed by the federal constitution or by acts of Congress, the law to be applied in any case is the law of the state, unquote. And that's at 304 U.S. 78. And then the ERIE court continued. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable to a state, and it goes on. So we've mentioned that there is no federal general common law. Judge Easterbrook had a case almost exactly like this arise in the Seventh Circuit where the question was whether to apply federal or state law in the interpretation of a jury waiver. In that case, it was Illinois law at stake and there was no higher standard under Illinois, so it was sort of not that important a question except for from the ERIE perspective. And he pointed out that, this is a quote, there is no general federal law of contracts after ERIE v. Tompkins. Thus, if federal law did control, the best it could do would be to use state law as its rule of decision, unquote. And that's from the IFC credit court case which is quoted in our papers. So no one is disputing that where there is a matter of the federal constitution at stake or whether it's a matter of an act of Congress or any of the federal rules that derive from acts of Congress such as the federal rules of civil procedure, federal law would certainly control. And indeed, the cases that say that the question about jury rights is a matter of federal law arise within those two silos. What's your response though to the argument that all other constitutional rights are fully capable of being waived? I mean, we do it all the time in criminal cases. No doubt. Go ahead, I'm sorry. No, I guess question mark. Absolutely. So again, no one is disputing that you can waive a right to a jury when you waive it pursuant to the federal rules or when you waive it in some other way that is recognized by applicable law. But what we have in... Your argument is that this was not a waiver that occurred as in the cases that Judge Tolman was just referring to were in the context of an ongoing proceeding where a defendant, for example, pleads guilty and waives all of his rights. But this was a contract that was written before any litigation took place. Precisely. So you look at Heron v. Southern Pacific. That was a case that involved the court's right to dismiss a claim where it was permitted under federal law and it wasn't going to allow Arizona law to constrict its application of federal law. That's a pretty straightforward application where federal rules give the court a certain power. State laws cannot take that power away. Knievel v. ESPN. You've got the Ninth Circuit saying essentially the same thing in the defamation case brought by the Knievels. State law might give the Knievels a right, although in that case the Montana law really didn't give a right for a jury for their defamation case. But the court went on to say even if it did, you can't take away the court's right under Federal Rule of Civil Procedure 12b-6 to dismiss a case where those standards are satisfied. So you've got this silo of cases saying you've got federal rules that give the court certain powers and state law can't circumscribe that. We understand that. We don't dispute that. Then you've got this other group of cases which is a similar line of cases and those ones are interpreting the Constitution, the scope and application of the Seventh Amendment in particular. And in those cases the court is construing the fact that the Seventh Amendment says you get a right to a jury at common law. So what exactly is that? What is the characterization of the claims? And when that's the issue, i.e. what does the Seventh Amendment mean, the similar court said only through a holding that a jury trial right is to be determined according to federal law can the uniformity in its exercise, which is demanded by the Seventh Amendment, be achieved. So the similar court was concerned that if you allow state law to determine what's a legal claim and what's an equitable claim and therefore what comes within the scope of the Seventh Amendment, you're going to end up with non-uniformity as to the meaning of the Seventh Amendment. And it wasn't going to allow that to happen. And again, squarely within one of these silos that we just defined, it's interpreting the federal Constitution. But I still don't understand. I take the point that Judge Corman just emphasized with his question I mean these are sophisticated entities that we're talking about here. We're not talking about an imbalance in bargaining as we typically see in consumer transactions. And I don't understand why as a matter of federal law there's something so sacrosanct about the Seventh Amendment that it's the one constitutional right that cannot be waived before or after litigation. That's not our argument. That's not our argument at all. We recognize that if the Seventh Amendment applies, which of course it does here, a waiver, if it's going to be effective, has to at a minimum be knowing and voluntary. That's the floor that the Seventh Amendment lays. Any waiver that is not knowing and voluntary is not going to pass Seventh Amendment. But now we're back to, you told me at the beginning that you're not challenging the clause itself, that the county proposed it, and I don't think you're arguing that the county didn't knowingly waive it when it proposed that one. Not at all, Your Honor, if I may. Go ahead. The Seventh Amendment establishes a floor that when you're in federal court, you are not going to be able to waive your right by any means unless at a minimum it's knowing and voluntary. That's not the issue here. We're not claiming that... But the district court made an express finding that the county did knowingly and voluntarily waive it. That is correct. And is it clearly erroneous to say the clear? No, that's not our issue. That's not our issue at all. The issue is that the waiver at issue here allegedly arises from a contract that is governed by California law, and under that California law, the provision in question is a nullity. So there is no waiver under the applicable law. That provision is a nullity. The applicable law here is not within... We've defined where federal law applies. Well, we haven't. ERIE has. If it was a matter of interpreting... And that's what, forgive me, that's what you've been focusing on is surely the Seventh Amendment is what governs it. The Seventh Amendment isn't at issue here. There's no dispute that the county has a Seventh Amendment right to a jury, and that if that were the only... If there were a waiver that were otherwise valid, that we wouldn't get out of it based on a knowingly and voluntarily standard of the Seventh Amendment. But what we have here is this is not a case interpreting whether the Seventh Amendment applies. It's not a case interpreting whether the court has a right to dismiss claims or otherwise act under the federal rules of civil procedure. This is a case where the question presented is whether the court should apply the time-honored ERIE principle that state law applies outside of those two silos, and particularly in the quintessentially state law issue of the enforceability of contracts. And if I may, one of the cases that's cited by respondents actually reinforces this point. And that's the... Let me make sure I understand what I just heard. So your position is, under ERIE, this is not procedural, this is substantive. There are procedural elements, but those are not at issue. What's at issue is the substantive question of whether the contract provision is enforceable. Right. I don't mean to oversimplify, but I just tend to do that. It seems to me that what the county's arguing is that the question of waiver arising by contract provision has to be assessed under the state law of contract. That is correct. Where that waiver is not part of the course of the litigation, we would argue that it does not fall within one of the silos that were defined under ERIE as within the federal context, and therefore there is no federal law, general common law, that reaches out into the contract space and overwhelms the California law. Instead, the federal courts must defer to the California law in interpreting the enforceability of that contract. Well, this is a great case where you may get to argue to the Supreme Court, or the other party may take it there, or maybe law professors will work for years on articles about it because they love ERIE. But what I would suggest is, because you're already over your time, if Judge Tallman could give you a couple of minutes extra, even though we're already four minutes over, to make rebuttal, then we could give Apelli's counsel a couple of minutes extra time and let Apelli argue, and then let you give a rebuttal response with your perspective. I would very much appreciate that. I don't know if it would be helpful to you for me just to make this one point for them to respond to before they come up. Go right ahead. This Collins-Plumbing v. Turner panic case, which they rely upon, was a case in which there was a pre-dispute jury waiver, and it was under California law, and the court in that case found that that federal law applied, and they went ahead and analyzed the provision under the federal standard knowing involuntary. But you know what they then did? They went on to analyze it under California unconscionability law, and they specifically said that the federal law did not preempt the California law in regards to the enforceability of the contract as to its unconscionability. So what we have here is a recognition, even in respondents' cases, that the federal rule is a floor, not a ceiling, and that the state law that may have the impact of preserving the jury right does not become a federal question just because it impacts that question. The question of whether the contract is enforceable in the first instance, whether it be based on unconscionability or statute of fraud, or in this case a statutory provision, that question is fundamentally and quintessentially a state law issue that must be analyzed separately. Well, Frederick, we have it. Thank you. Thank you. And I will give you a couple of minutes on rebuttal. Let's hear from opposing counsel. Mr. Escobar. Good morning, Your Honors. May it please the Court, William Escobar on behalf of the respondents Tata America and Tata Consultancy. We're here on a petition for writ of mandamus. That petition must be denied here because the district court did not commit any error at all, let alone an error of the type where mandamus is appropriate. There is nothing in the court's decision that suggests that the court was engaged in some usurpation of authority, that the court was not applying controlling precedent, or that it was somehow acting beyond its jurisdictional power. On the contrary, Your Honor, the court's decision carefully analyzed controlling Supreme Court and Ninth Circuit precedent that establishes, not in one case, not in two cases, but in cases throughout the circuits and the Supreme Court, that when a litigant goes into federal court, as the county did here, and that litigant seeks a Seventh Amendment jury trial, and it asks for that jury trial in a federal court, for a federal jury, under Federal Rule of Civil Procedure 38. Okay, but that's all after litigation has commenced and the rules apply. What I hear the county saying, we have to look at pre-litigation decisions and the enforceability of a pre-litigation waiver of the right to jury, which, under California law, I don't think there's any dispute, is unenforceable because it doesn't fall within a statutory exception. Well, Your Honor, what happens is, you're correct, the federal rules kick in when you file the case, and they ask for the federal jury. At that point, we're entitled under Rule 39 to make a motion to strike the jury demand if there is a basis for arguing that there is no federal right to a jury trial in this case. And at that point, we're entitled to look at the procedural clause in the contract where the contract drafted by the county said that the jury was waived. So we're entitled to make a motion on that basis, which is what we did. The judge then looked at that issue and did a thorough and careful analysis to make sure that she was putting the issue of a jury waiver to the proper scrutiny. The question, though, is, the California law that they're saying applies is California procedural rules. In the Grafton case, what was at issue there was California Code 631, which is sort of the analog to Federal Rule Civil Procedure 38. It was a procedural rule about how you obtain and how you retain a jury in a case filed in California. I'm not so sure I agree with that characterization. It seems to me that what the California Supreme Court said in Grafton Partners was that under California Constitution, the right to a jury trial is equally, if not more, sacrosanct than under the Federal Constitution. And the only time that you can effectively waive it is pursuant to a statutory exception established by the legislature, and none of those exceptions apply here. Therefore, as a matter of California substantive law, these clauses cannot be recognized in California if that law is incorporated into this contract. And that Grafton decision was centered around the procedural rule in California. You're correct that the decision was that this kind of jury waiver in California is not enforceable because the procedural rules of California said that this is not enforceable unless it's tied to a statute. I think it's more than that. But even if that's the case, Your Honor, even accepting that point, two things. One is, counsel acknowledged that there is a procedural issue here, and this is a fundamental point because it not only relates to the cases that the judge looked at and relied on, but it also relates to the question of Erie. What we're dealing with here is a procedural question. The Ninth Circuit has said that the issue of a jury is a procedural question. The substantive question is parties having a fair trial with a jury being a procedural mechanism for getting that fair trial. Once it's a procedural issue, and the county, I heard the county acknowledge that there are procedural issues involved here. Once it's a procedural issue under Erie, the question then is, what is the federal procedure that governs? And this is an important and vital point because federal courts want to maintain uniformity in how procedural issues are decided within the federal courts. But how do we score that with our Supreme Court precedent with regard to choosing arbitration in lieu of going to federal court in a contract in advance of the litigation? Well, in both of those things, both arbitration clauses and waiver of jury clauses are characterized as procedural clauses because the parties are deciding on a particular procedure that is a matter of contract in the negotiations they want to call on. So in the arbitration, arbitration clauses are generally enforced. There's obviously a big policy of enforcing them both in the federal law and state law. The issue here, and this is going back to the point here, on this petition, what is the error? What is the clear error? What is the abusive error that the district court made? There isn't any because at a minimum, the court was looking at, first of all, binding precedent that said squarely and repeatedly, in federal court, the question of a federal jury is a matter of federal law. She also said, to Your Honor's earlier point, that when the issue is the waiver of a federal constitutional right, that is a matter of federal law. What they waived here is the federal Seventh Amendment right to a jury trial. So all of this means that what the court had to look at was a federal body of law. The judge carefully looked at the controlling precedents in the Ninth Circuit. She looked at the precedents in the Supreme Court. She examined the cases in other circuits. She then looked at the conflicting district court decisions because, as you know, there are, by my count, a total of about eight district court decisions, California, Georgia, that address this post-Grafton issue. And what she found is that there's a split of authority on those cases. Well, she does not commit error by disagreeing with one group of district judges, which she did. She said that the district decisions from the Northern District she did not find persuasive because, on this procedural question, on this federal question, those cases were relying on state procedural law, something underpinning a state procedural law. Can I ask you, are you arguing that there shouldn't be mandamus relief because of this high standard, but they can re-litigate this on appeal after a final judgment? Well, I think the judge's order on striking the jury would be one that would be appealable after the conclusion of the case. And so that if we agreed with you and we said there is no mandamus relief here, this is still... her ruling would still be an open question when the case came up after a verdict, when it was a final judgment, obviously.  Is it yes or no? That is correct, Your Honor. However... And I assume you don't want a jury trial for the same reason he wants one. There is both a contractual and a strategic factor in that, Your Honor. Now, I'm trying to think this through. You know, given that, is there a potential for forum shopping under these circumstances? Well, I suppose... I assume that California couldn't... it may not have been true in the specific circumstances of this case, but do we deal, because there are strategic reasons why people want jury trials and why they don't want it in a particular case, is there a potential for forum shopping? Your Honor, only as between the choice that parties often have, whether they can bring the case in either federal court or state court. This is a diversity case, and so, therefore, it was going to be in federal court. I don't believe that there is... There is a concern, however, on the other side of this, that if you had... Well, it might have been in federal court. Suppose they had brought it in state court. You might not have... You would have had to have made a decision as to whether you want to have it removed or not. And you would have made that decision, presumably or possibly, because of what you perceived to be a more favorable resolution of the issue of whether there's a jury trial or not. Well, that's correct, Your Honor. I think removal decisions often have those factors at play, including things such as appeals and other factors. But, again, the point that you started your question with is relating to the writ of mandamus. And there is nothing in the county's argument or in their papers that identifies any error by the court. I didn't hear in their argument, and I didn't see in their papers, the identification of a single clear error. And, in fact, when the court was looking at the other district court decisions where courts went in different directions in the post-Grafton time period, that by itself shows that there is no error for her deciding to go with one camp that was looking at this issue. And the Grafton decision, on top of that, Your Honor, to one of your earlier questions, we don't agree that the Grafton decision forecloses the enforceability, even in state court, of this particular contract. Because this is a different type of situation. The contract was entered into and approved by the Board of Supervisors of Orange County. It is a legislative body. That body has been given powers by the California legislature on entering into contracts and on controlling and directing litigation. But I'm not sure that a county board of supervisors has the authority to carve out a new exception that the California legislature has not provided in the Code of Civil Procedure. Is that what you're arguing? Well, no. My argument is that the county's power to enter into a contract and to enter into a contract with this provision as part of its deciding how to litigate its cases, that that derives from a statutory scheme from the California legislature which gave the county those powers. And it's analogous to... But the conclusion to your argument is that by doing so, the Board of Supervisors implicitly bound itself to a waiver of the right to a jury trial, and that that somehow overrides the fact that there is no statutory exception, as the Supreme Court said in Grafton, is required to enforce such a provision. Well, I think the Grafton decision can be looked at as there has to be a statutory mechanism in place that allows for the enforceability of the waiver. So, for example, that decision dealt with the issue of arbitration. Arbitration is permitted in California, and obviously arbitration encompasses waiver of not only the jury... I thought there was a separate provision in California civil law for arbitration. There is a statutory scheme that provides for arbitration, and that's a different scheme than the rule that was at issue in Grafton. But the court said, when you have a statutory scheme, the California legislature has said that arbitration is proper, so arbitration clauses are enforceable. My point is that here, the California legislature has given the power to the county to decide how to direct its litigation. And that's the leap I'm having a difficult time making, Counsel, because what you are essentially saying is that the state legislature has delegated to a county board of supervisors its legislative authority to carve out a new statutory exception to this issue. And I just don't see how we can go that far. I would say it's a little bit of a jump and not so much as a leap, Your Honor. How about... What I'm suggesting, Your Honor, is that the county does have a legislatively granted power to decide how it conducts litigation. But that gives the board of supervisors the authority to, for example, bind the county to entering into the contract. I don't see where that goes to the next step of binding the county to do something which, under state law, is unenforceable under California law. Well, and my point is that a county doing this as opposed to a private litigant who does not have the statutory backing of a grant of power on how to conduct litigation does create a different situation. But all of this, while the Grafton case is extremely interesting for a lot of different reasons, none of this is really relevant here where the question is, did the district court commit a clear error that warrants a writ of mandamus? Counsel, Judge Gould, I'd like to ask you a question on that particular point to get your perspective. So I think if the traditional Bauman factors, the five factors under Bauman for mandamus, if they apply, then you've got a pretty strong argument that there can't be a clear error, which is one of those factors often thought most important when the authority is split. You've got some courts going this way, some another way. But what I'd like you to address is I thought there was some authority that when we deal with a jury, whether a jury right was waived, that the only question for us is was there a waiver or not as opposed to, was there a knowing and intelligent waiver or not rather than look at whether there was clear error? Your Honor, I think what the cases say, and I think you're referring probably to the Dairy Queen case and a couple of other cases. Mondore is the one that I had in mind. And I think what they say is that the jury right is clearly an important one and a vital one where a level of scrutiny has to be brought even in a writ of mandamus situation, a high level of scrutiny to determine whether there has been a waiver, whether the party is entitled to the jury right. So I agree that there is a high level of scrutiny that must be provided to the issue. And I believe, Your Honor,  this court is giving it a high level of scrutiny by requiring the briefing and requiring oral argument on this where that's not the norm in writ of mandamus cases. I also think that the record below, the district court gave it a high level of scrutiny as well. So the question still falls back to where the district court was looking at this is that this is a procedural issue and that federal law governs. Let me come back. Let me ask you a question on that just again to get your perspective. And it's a very hard case. I haven't personally concluded my views on it. If federal law is going to apply on procedural matters and whether a jury was waived is a procedural matter, so at least it seems to me, subject to hearing from others in conference, that we should say the waiver issue is a federal law issue. But that still then leaves the question whether a federal court applying federal law of waiver in the circumstances here should look to the substantive contract law of the state in assessing a waiver not under the court's procedures, but a waiver that allegedly arises from a contract. And the answer to that, Your Honor, from our standpoint is that no, the court does not look at state law because the issue is not a contractual issue. It's not a question of validity of the contract or the provision. It's a question of enforceability. Enforceability is not permitted under the reading of Grafton that the court was discussing earlier in state court. But the same provision is clearly and squarely enforceable in the federal court provided that the court gives it the high level of scrutiny and requires the party moving to strike the jury to establish and carry the burden of showing that the waiver was voluntary, intelligent, and knowing. And the court here applied the established factors that have been asserted in federal court for doing that. So you're quite right and all of you are quite right that the jury question is a significant one, but the federal law takes that into account by having set up a series of tests that a party moving to strike the jury must meet and the court specifically undertook that test. So it takes me all the way back to the main point that the district court did not commit any error here at all. In fact, there is a far stronger argument that some of the other district courts that went the other way were in fact ignoring federal controlling precedent on this issue. It's the Constitution. What's ironic here is that the county's argument is entirely consistent with the federal Constitution which requires a jury trial and they're arguing precisely for what the Constitution gives them and what Illinois would give them in terms of enforcing an Illinois contract would give them in an Illinois court. I mean the whole reason we're here on mandamus is because of the notion that it should be available because what's at stake is the fundamental right to a jury trial. But this brings into play equally important principles about federal courts conducting their federal business under the federal rules of civil procedure. This is not the federal. This is all federal. This is all judge-made law. There's nothing in the rules that say a pre-litigation contractual arrangement is somehow governed by federal law. I mean this whole knowing and deliberate waiver concept for matters in litigation is all judge-made law. That's correct, Your Honor, but there is in the federal rules and under the Constitution there is federal law about jury trials in federal court and my point is that the district court was correct in analyzing that question, the question of waiver under the federal law that applies when one is in federal court seeking a federal jury. In fact, Rule 39 specifically describes in the section that we move under that the issue is the federal right to a jury trial. So the whole thing here is the district court was looking at the question of a federal jury trial right and then it concluded correctly on the binding precedent for that court that that was a federal question and then it proceeded to analyze it under the judge-made law applying to waivers. So the court did not commit a single error let alone the kind of error that warrants a writ. Okay, I've let you run over since I let your opponent run over. Let's hear Mr. Broderick's final thoughts on the subject. Thank you, Your Honor. Thank you. Thank you, Your Honor. Let's start with the standard that has to be established here. As was already pointed out under Mondor, all that's really at issue here is whether the jury right was properly denied or not. I don't think we need to look at the five Bauman factors. You do not need to look at the five Bauman factors. There's no requirement for clear error. It's simply a matter of whether there was an error. And here there clearly was an error. Although respondent insists that the district court carefully examined and analyzed all the cases, the truth is that what we have here is a case of simply taking a sound bite from these cases that says that the issue of determining a jury in federal court is a matter of federal law. Okay, so let's apply that here. There was no analysis as to whether or not those cases from which those quotes come were under federal rules of civil procedure or the federal constitution and thus on the federal side of the area analysis or whether those cases involved matters of contract law which are clearly on the state law of the area analysis. Those cases indeed were. Those cases upon which the respondent court relied were indeed on the federal side of that silo. Whereas our case, which involves a question of the interpretation and enforcement of a contract that was entered into prior to the litigation, clearly falls within the state side of that law. So... I'm still hung up though on the first question I asked you and that is this argument would make a whole lot more sense if it was being made by the other side. But you wrote the contract and now you're here saying, well I know we have it in our form contract but we really didn't mean it. We're now tenaciously clinging to our 7th Amendment right to a trial by jury and we want you to ignore how we got to this point. It's an understandable concern, Your Honor. And I would just mention that the county has taken steps to remove this from their contracts going forward. I'm sure it has. But that doesn't solve the problem for this case. No, it does not. And of course it was an error to have left it in in the first place. But again, not that the errors of others excuse what the county did but what we see here and from the court's perspective, the issue is not how good were the county's lawyers and why didn't they advise them to take this out. That's not the issue here. The issue is whether or not this is going to keep on coming back and what the right answer is. And indeed, based on the fact that we've had four of these cases very recently, it's very likely to come back. And so the forum shopping concern is very real. In these cases, the defendants will no doubt attempt to remove this case to federal court for the very reason that they hope to get a different result if the county's writ petition here is denied. So it is consistent with the Erie holding and it is consistent with the Erie rationale, which is to provide the same substantive result in federal and state court to avoid forum shopping to grant the county's writ petition. As was also pointed out, there is no federal statute that defines when a waiver must occur. There is simply judge-made law that interprets when a waiver cannot occur, i.e. if the waiver is not knowing and voluntary, a federal court will not accept it in whatever form. So that is clearly the case. We understand that there's always going to be that 7th Amendment overlay that will provide the floor under which no waiver will be enforced. But that says nothing at all about whether a state can have a substantive contractual provision that limits the conditions under which a contract will be enforceable. And I don't think there's any doubt at all that if the state had a rule, if this was an oral contract and they had some rule of statute of frauds, or if there were any other question, or unconscionability, as was pointed out in the Collins-Pluman case, there's no question at all. This court would be not struggling in the least to determine that state law governs the enforcement of the contract. This should be no different. This is a state law determining the circumstances under which a state contract will be enforceable. And I would mention that in Grafton, the provision that was invalidated was just as broad as the provision here. It wasn't just limited to state jury right. The provision in that case applied to all jury rights. And although the state court cannot bind the federal court, the state court can make determinations as to when a contract is valid. And the Grafton court completely invalidated this jury waiver provision as it related to both state and federal jury rights. So to not grant the counties writ would be to allow the federal court to impose a federal common law of contracts, which simply does not exist. And it would constitute clear error. It would also be poor policy in that it would encourage form shopping. Submit on that subject to any questions you may have. Let's count it. It looks like my colleagues have anything else. I think we will declare the case. I'll wait to see the joint law review article written by Mr. Escobar and Mr. Broderick published in the Yale Law Journal. Thank you very much. In point counterpoint form. Thank you. All right. The case is submitted on the briefs, and we are adjourned for the day.
judges: Korman, Gould, Tallman